UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN NULF, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. |
| ALVARIA, INC. and CARRINGTON MORTGAGE SERVICES, LLC | **CLASS ACTION COMPLAINT** |
| Defendants. | **Jury Trial Demanded** |

Plaintiff Brian Nulf ("Plaintiff") brings this class action complaint against Defendants Alvaria, Inc. ("Alvaria") and Carrington Mortgage Services, LLC ("Carrington") (collectively, "Defendants") to recover damages, restitution, and injunctive relief on behalf of a Class of persons whose information ("Personally Identifiable Information" or "PII") was accessed without authorization by criminals as a result of Defendants' unreasonable and deficient data security practices.

Plaintiff makes these allegations on personal information as to those allegations pertaining to himself and his personal circumstances, and upon information and belief, based on the investigation of counsel, and facts that are a matter of public record, on all other matters.

## I.    NATURE OF THE ACTION

1.    This class action lawsuit arises out of Defendants' notification to Plaintiff and Class members informing them about the Data Breach on April 26, 2023.

2.    Because of Defendants' unreasonable data security practices, monitoring, and unreasonable aggregation and integration of Plaintiff's and Class members' PII into their systems, on or about March 9, 2023, unauthorized persons who are criminal actors gained access to Defendants' systems and accessed and obtained Plaintiff's and Class members' PII. (the "Breach"

or the "Data Breach").

3.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties to these individuals to safeguard and protect the PII from unauthorized access. Defendants admit that the unencrypted PII accessed and exfiltrated includes highly sensitive information, such as names, mailing addresses, telephone numbers, loan numbers, current loan balances, and the last four digits of Social Security numbers.

4.     The exposed PII of Plaintiffs and Class members can be and in certain cases has been sold to other identity thieves or on the dark web, a hidden network of black-market websites that serves as a "haven for all kinds of illicit activity (including the trafficking of stolen personal information captured through means such as data breaches or hacks)."[1]

5.     This PII was compromised due to Defendants' negligent and/or careless acts and omissions and their failure to protect PII of Plaintiff and Class Members.

6.     Until notified of the breach, Plaintiff and Class Members had no idea that their PII had been compromised by the Data Breach and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This risk will remain for the rest of their lives.

7.     Plaintiff and Class members bring claims for negligence, negligent misrepresentation and unjust enrichment against Defendants as the PII of the Plaintiff and Class Members was compromised as a result of Defendants' failure to: (i) adequately protect the PII of Plaintiff and Class members;(ii) warn Plaintiff and Class members of their inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities. Defendants' conduct amounts to at least

---

[1] https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last visited May 5, 2023).

negligence and violates federal and state statutes designed to prevent or mitigate this very harm.

8.      Plaintiff and Class Members have suffered actual and present injuries as a direct result of the Data Breach, including: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft for their respective lifetimes; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the present and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendants on the mutual understanding that Defendants would safeguard their PII against theft and not allow access to and misuse of their personal data by others; and (h) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further injurious breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII. Plaintiff and Class Members, at the very least, are entitled to damages and injunctive relief tailored to address the vulnerabilities exploited in the breach, and designed to protect Plaintiff's and Class Members' PII, as well as an order from the Court directing the destruction and deletion of all PII for which Defendants cannot demonstrate a reasonable and legitimate purpose for continuing to maintain possession.

9.      Defendants understand the need to protect the privacy of their customers and use security measures to protect their customers' information from unauthorized disclosure. And as sophisticated entities who maintain private and sensitive consumer information, Defendants further understood the importance of safeguarding PII. Yet Defendants disregarded the rights of

Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class members' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through access to and exfiltration by an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

10.     Plaintiff and the Class Members by this action seek compensatory damages together with injunctive relief to remediate Defendants' failures to secure their and other Class Members' PII, and to provide damages, for among other things, for Plaintiff and Class Members to secure identity theft insurance, and credit repair services for Class Members' respective lifetimes to protect the Class of Data Breach victims from identity theft and fraud.

## II.    PARTIES, JURISDICTION AND VENUE

13.     Plaintiff Brian Nulf is a resident and citizen of the State of Indiana.

14.     Alvaria is a Delaware Corporation with its principal place of business in Westford, Massachusetts.

15.     Carrington is a limited liability company organized under the laws of Delaware with its principal place of business in Anaheim, California.

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below is a citizen of a different state than Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

17.     The Court has personal jurisdiction over Defendants because Defendants' negligent acts or omissions and false and misleading misrepresentations regarding the security of Plaintiff's and Class members' PII alleged herein occurred in Massachusetts. Defendant Alvaria has a principal place of business in Massachusetts.  Defendant Carrington is registered to do business in Massachusetts, has a registered agent for service of process in Massachusetts and a Massachusetts Debt Collector License,[2] transacts business in Massachusetts and/or contracts to supply services or things in Massachusetts, as provided in M.G.L., c. 223A, §§ 3(a) and (b).

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injuries in this case substantially occurred in this District and Defendants reside and/or are registered to do business and transact business in this District.

### III.     FACTUAL BACKGROUND

**Background as to Alvaria**

19.     Alvaria is "the world leader in enterprise-scale customer experience and workforce engagement management."[3]

20.     As noted in the Notice of Security Incident issued by Alvaria, at all times relevant to this Complaint and the Data Breach, Alvaria had been under contract with Carrington to provide support services to Carrington including but not limited to file automation and outbound calling tasks. *See* Notice of Security Incident, attached hereto as **Exhibit 1**.

21.     In providing services to Plaintiff and Class Members on behalf of Carrington, Alvaria generated and retained additional sensitive personal information about Plaintiff and Class Members, including information concerning their loan services and information provided to them by their affiliates and sub servicers.

---

[2] *See* https://www.carringtonmortgage.com/legal/state-licensing (last visited May 5, 2023).
[3] *See* https://www.alvaria.com/ (last visited May 4, 2023)

22.     Sophisticated companies like Alvaria are aware of the different types of threat actors acting across the Internet and the type of criminal cybersecurity acts they employ for profit. Accordingly, it is imperative that Alvaria guard against those criminal exploits.

23.     Plaintiff and Class Members, as current and former customers of Defendants or their affiliates, relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

24.     Alvaria had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties. Alvaria collected, maintained, and profited from information that it knew to be private and sensitive, and it was aware of the consequences to Plaintiff and Class Members if it failed to adequately protect that information. Alvaria breached its duty to Plaintiff and Class Members and allowed an attacker access to its systems for months without detection.

25.     Alvaria knew that the PII it maintained was a target of data thieves and that it had a duty to protect Plaintiff's and Class Members' PII from unauthorized access.  For example, Alvaria posts a privacy policy on its website.[4]  Alvaria states that

> We are committed to keeping your personal information confidential and secure. We maintain appropriate physical, electronic, procedural, technical and organizational measures to help safeguard personal information from loss, theft, misuse, unauthorized access, disclosure, alteration and destruction. Access to your personal information is limited to those who need the information to fulfill the task for which the personal information was collected. All our employees, contractors and agents who have access to and are associated with the processing of personal information are obliged to respect the confidentiality of the personal information of all visitors to the Sites and all users of our services.
>
> Please be aware, however, that any email or other transmission you send through the internet cannot be completely protected, and we cannot guarantee the security of your information you transmit to our Sites. We recommend you take every precaution to

---

[4] *See* https://www.alvaria.com/legal/privacy-policy (last visited May 4, 2023)

protect your personal information when you are on the internet. For example, change your passwords often, use a combination of letters and numbers when creating passwords and make sure you use a secure browser.[5]

26.     Alvaria's policy also provides a list of instances in which the disclosure of PII could be made to its affiliates and other entities without prior authorization - none of which is applicable here.

27.     Alvaria is a sophisticated company that knew or should have known that PII, including Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

**Background as to Carrington**

28.     Carrington is a top 25 mortgage servicer across the United States, servicing over 682,000 loans across the United States as of December 13, 2022.[6]

29.     Plaintiff and Class Members who received mortgage related services from Carrington were required to entrust some of their sensitive and confidential information, including PII, to the care of the Defendants, including, without limitation: name, address, loan number, Social Security number, and additional information provided in connection with a loan application, loan modification, or other items necessary for loan servicing. Much of the information Plaintiff and Class Members entrusted to Defendants is static, does not change, and can be used to commit myriad financial crimes.

30.     In providing services to Plaintiff and Class Members, Defendants generated and retained additional sensitive personal information about Plaintiff and Class Members, including information concerning their loan services and information provided to them by their affiliates and

---

[5] *Id.*
[6] *See* https://www.businesswire.com/news/home/20221219005053/en/Carrington-Mortgage-Services-Amasses-122.1-Billion-in-Servicing-Balances (last visited May 4, 2023)

sub servicers.

31.     Sophisticated companies like Defendants are aware of the different types of threat actors acting across the Internet and the type of criminal cybersecurity acts they employ for profit. Accordingly, it is imperative that Defendants guard against those criminal exploits.

32.     Plaintiff and Class Members, as current and former customers of Defendants or their affiliates, relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

33.     Defendants had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties. Defendants collected, maintained, and profited from information that they knew to be private and sensitive, and they were aware of the consequences to Plaintiff and Class Members if they failed to adequately protect that information. Defendants breached their duty to Plaintiff and Class Members and allowed an attacker access to their systems for months without detection.

34.     Defendants knew that the PII they maintained was a target of data thieves and that they had a duty to protect Plaintiff's and Class Members' PII from unauthorized access.  For example, Carrington posts a privacy policy on its website.[7]  Carrington states that "Our hosting services maintain their systems in accordance with reasonable industry standards to reasonably secure the information of its customers. However, no data transmission over the Internet can be guaranteed to be 100% secure. "Perfect security" does not exist on the Internet, and you use the Site at your own risk."[8]

35.     Carrington's policy also provides a list of instances in which the disclosure of PII

---

[7] *See* https://www.carringtonmortgage.com/legal/privacy-policy (last visited May 4, 2023)
[8] Id.

could be made to its affiliates and other entities without prior authorization - none of which is

applicable here:

### 4. Sharing Your Information

We do not rent, sell, or share with third parties the Personal Information we collect from you on this Site except (i) to provide information or services that you have requested, (ii) with your permission, or (iii) under the following circumstances:

- Third party vendors we engage to provide services on our behalf, such as hosting, web-site development, and support, have access to Personal Information, but they have agreed not to disclose the Personal Information or to use it for any purpose other than providing the requested services.

- There may arise special circumstances where it is necessary for us to disclose and use Personal Information and Non-Personal Information, such as: to enforce this Privacy Policy or any other part of our Terms of Use; to protect our property or rights; to protect the safety of anyone; to investigate, prevent, or take action regarding illegal or improper activities; to carry out a merger or consolidation with another entity, a sale or transfer of some or all of our assets, or any similar transaction; or for other reasons we determine in good faith are necessary, appropriate, or required by law, such as when we respond to subpoenas, court orders, or other legal or administrative process.

*Id.*

36.     Moreover, Defendants are sophisticated companies that knew or should have

known that PII, including Social Security numbers in particular, is an invaluable commodity and

a frequent target of hackers.

37.     There were a record 1,862 data breaches in 2021, surpassing both 2020's total of

1,108 and the previous record of 1,506 set in 2017.

38.     In light of recent high profile data breaches at other industry leading companies,

including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June

2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January

2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion

records, May 2020), Defendants knew or should have known that their electronic records would

be targeted by cybercriminals.

39.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service regularly issue warnings to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

40.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

**The Data Breach**

41.     On April 26, 2023, Alvaria sent to Plaintiff and putative Class Members a "Notice of Data Incident" (the "Notice"), a true and correct copy is attached as **Exhibit 1** to this Complaint, in which Alvaria disclosed that:

> "On March 9, 2023, Alvaria was the victim of a sophisticated ransomware attack on a portion of our customer environment that maintained some of our customers' workforce management and/or outbound dialer data…Our investigation determined that, on March 9, 2023, the unauthorized actor obtained access to and procured some data associated with Carrington Mortgage Services, LLC, which may have contained your personal information.

*See* **Exhibit 1**.

42.     The Notice went on to disclose to Plaintiff and Class Members that "the impacted files may have contained your personal information including your name, mailing address, telephone number, loan number, current loan balance, and *the last four digits of your Social Security number. Id.* (emphasis added)

43.     Plaintiff received notice of the Data Breach.

44.     The full impact and scope of the Data Breach and PII involved remains under investigation to this date.

45.     On information and belief, Plaintiff's and Class members' PII was copied multiple

times by criminals and sold or used for criminal activity that threatens to cause harm to Plaintiff and Class members.

46.     In addition to failing to secure the PII with reasonable measures and failing to prevent the Data Breach, Defendants unreasonably delayed fulfilling their obligations to provide notice of the Data Breach to Plaintiff and Class members. The Data Breach was discovered some time around March 9, 2023, yet Defendants finally notified Plaintiff and Class members that their PII may have been taken over seven weeks later.  This was in violation of the prompt notice provisions of M.G.L., c. 93H, § 3,[9] among other statutory and regulatory provisions.

47.     Defendants did not use reasonable security procedures and practices suitable or adequate to protect the sensitive, unencrypted information it was maintaining for consumers, causing the access and/or exfiltration of the PII.

**Securing PII and Preventing Breaches**

48.     Defendants could have prevented this Data Breach by properly securing and encrypting Plaintif's and Class Members' PII. Additionally, Defendants could have destroyed data, including old data that Defendants had no legal right or responsibility to retain.

49.     Defendants' negligence in safeguarding Plaintiff's and Class Members' PII was exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially sensitive financial data.

50.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

---

[9] This statute requires that Defendants, once they knew or had reason to know of a data breach involving personal information and affecting Massachusetts residents, to provide prompt and direct notice of such breach to any affected Massachusetts residents, to the Massachusetts Attorney General, and to the Massachusetts director of consumer affairs and business regulation.

51.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[10]

52.     The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, [and] employer or taxpayer identification number."[11]

53.     The ramifications of Defendants' failure to keep secure Plaintiff's and Class Members' PII are long lasting and severe. Once Social Security numbers and other PII have been stolen, fraudulent use of that information and damage to victims may continue for years.

**The Value of PII and Data Breaches in General**

54.     PII is very valuable to criminals, as evidenced by the prices they will pay for it on the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information is sold at prices ranging from $40 to $200, and bank details have a price range of $50 to $200.[12] Criminals also can purchase access to entire sets of information obtained from company data breaches for prices ranging from $900 to $4,500.[13]

55.     Social Security numbers are among the most sensitive kinds of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive

---

[10] 17 C.F.R. § 248.201 (2013).
[11] *Id.*
[12] Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-onthe-dark-web-how-much-it-costs/ (last accessed May 4, 2023)
[13] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymousbrowsing/in-the-dark (last visited May 4, 2023)

financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[14]

56.     In addition, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

57.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

58.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, financial history, and Social Security number.

59.     This data commands a much higher price on the black market. Martin Walter, senior

---

[14] Social Security Administration, Identity Theft and Your Social Security Number, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed May 4, 2023).
[15] Bryan Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-shackers-has-millionsworrying-about-identity-theft (last accessed May 4, 2023).

director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[16]

60.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

61.     The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

62.     Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damage in addition to any fraudulent use of their PII.

63.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on their network, comprising millions of individuals' detailed and confidential personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

64.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and Members of the Class

65.     According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.

66.     Consumers place a high value not only on their personal and financial information,

---

[16] Time Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10xprice-of-stolen-credit-card-numbers.html (last accessed May 4, 2023).

but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

67.     The United States Government Accountability Office ("GAO") explains that "[t]he term 'identity theft' is broad and encompasses many types of criminal activities, including fraud on existing accounts—such as unauthorized use of a stolen credit card number—or fraudulent creation of new accounts—such as using stolen data to open a credit card account in someone else's name."[17] The GAO Report notes that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[18]

68.     The Federal Trade Commission ("FTC") recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports often, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.

69.     Identity thieves use stolen personal and financial information for "various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes," including "credit card fraud, phone or utilities fraud, bank fraud and government fraud." *In re Zappos.com, Inc.*, 888 F.3d at 1024. The information exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class members at a higher risk of "phishing," "Vishing," "smishing," and "pharming," ways for hackers to exploit information they already have to get even more personally identifying information through unsolicited email, text messages, and

---

[17] https://www.gao.gov/assets/a262904.html (last visited May 5, 2023).
[18] *Id*.

telephone calls, purportedly from a legitimate company requesting personal, financial, and/or login credentials.

70.     There may be a time lag between when harm occurs and when it is discovered, and also between when personal and financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

> *See* GAO Report, at p. 29.

71.     Personal and financial information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber blackmarket" for years.

72.     Thus, there is a strong probability that entire batches of stolen information have been dumped on the black market or are yet to be dumped on the black market, meaning Plaintiff and Class members may be at an increased risk of fraud and identity theft for many years into the future.

73.     Data breaches are preventable. As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[19]

---

[19]  Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," in Data Breach and

74.     "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."[20]

75.     Criminals can use the information to devise and employ phishing and social engineering schemes capitalizing on the genuine information stolen from Defendants to send fraudulent mail, emails, and other communications to Plaintiff and Class members that look authentic, but which are designed to lure them into paying money or providing other information that the criminals can use to steal money.

76.     Criminals can use the payment and financial information that Defendants were entrusted with to perpetrate financial crimes that harm Plaintiff and Class members, or as appears to have happened to Defendants in this case, criminals can leverage pieces of information to gain access to additional information that they can use to exact significant damage on victims.

## IV.     PLAINTIFF-SPECIFIC ALLEGATIONS

77.     Plaintiff Nulf's Mortgage Loan has been serviced by Carrington since at least 2020. As a condition of receiving loan servicing from Carrington, Plaintiff Nulf has provided his PII to Carrington which was then entered into Carrington's database and maintained by Alvaria on behalf of Carrington.

78.     Based upon the Notice, Plaintiff Nulf's PII was shared by Carrington to Alvaria for purposes of which Plaintiff Nulf had no knowledge of until he received the Notice.

79.     Plaintiff Nulf greatly values his privacy and PII, especially when receiving loans and other financial services.  Prior to the Data Breach, Plaintiff Nulf took reasonable steps to

---

Encryption Handbook (Lucy Thompson, ed., 2012).
[20] *Id*. at 28.

maintain the confidentiality of his PII.

80.     On or about May 2, 2023, Plaintiff Nulf received the Notice.  The Notice stated to Plaintiff and Class Members that "the impacted files may have contained your personal information including your name, mailing address, telephone number, loan number, current loan balance, and *the last four digits of your Social Security number*. *Id.* (emphasis added)

81.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiff Nulf faces, Defendant offered him a two-year subscription to a credit monitoring service.

82.     After receiving the Notice, Plaintiff Nulf spent at least two hours checking his bank statements and financial accounts and has changed at least one password to those accounts.

83.     Since the Breach, Plaintiff Nulf has noticed an increase in spam messages in the form of spam calls and emails.

84.     The Data Breach has caused Plaintiff Nulf to suffer fear, anxiety, and stress which has been compounded by the fact that Defendants have not been forthright with information about the Breach.

85.     Plaintiff Nulf plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his depository, credit, and other accounts for any unauthorized activity.

86.     Additionally, Plaintiff Nulf is very careful about sharing his PII. He has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

87.     Plaintiff Nulf stores any documents containing his PII in a safe and secure location or destroys the documents. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

88.     Plaintiff Nulf has a continuing interest in ensuring that his PII, which, upon

information and belief, remains in Defendants' possession, is protected and safeguarded from future breaches.

## V.   CLASS ALLEGATIONS

89.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a Class defined as follows:

> All individuals residing in the United States whose PII was accessed or exfiltrated during the Data Breach announced by Alvaria, Inc. and Carrington Mortgage Services, LLC on April 26, 2023.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

90.     **Numerosity**: The exact number of Class members is unknown to Plaintiff, but individual joinder is impracticable. Based upon Defendant Carrington's public statements, the number of Class Members may exceed 685,000 borrowers.  The number and identities of Class Members can be ascertained through the Defendants' records.

91.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and Class members sustained damages arising out of the same acts and omissions of Defendants relating to their failure to protect, oversee, monitor, and safeguard the PII.

92.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

93.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

94.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not necessarily limited to the following:

        a.     Whether Defendants failed to maintain reasonable security procedures;

        b.     Whether Defendants failed to adequately safeguard the PII of Plaintiffs and Class Members;

c.      Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

d.      Whether Defendants had duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

e.      Whether Defendants had a duty not to use the PII of Plaintiff and Class Members for non-business purposes;

f.      When Defendants learned of the Data Breach;

g.      Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

h.      Whether Defendants failed to promptly notify Plaintiffs and Class Members that their PII had been compromised;

i.      Whether Defendants failed to implement and maintain reasonable security procedures and practices adequate to protect the information compromised in the Data Breach, considering its nature and scope;

j.      Whether Defendants have adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

k.      Whether Defendants engaged in unfair, unlawful, or deceptive practices, including by failing to safeguard the PII of Plaintiff and Class Members;

l.      Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct;

m.      Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct;

n.     Whether Plaintiff and Class members are entitled to restitution on the basis of unjust enrichment;

o.     Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

p.     Whether Defendants' conduct constitutes negligence;

q.     Whether Defendants' conduct constitutes negligent misrepresentation; and

r.     Whether Plaintiff and Class members are entitled to damages and injunctive relief.

95.    **Superiority**: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small in comparison to the burden and expense of individual prosecutions of litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties and the court systems of many states and federal districts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

# VI.   CAUSES OF ACTION

## COUNT I
### Negligence

96.   Plaintiff incorporates paragraphs 1–95 as if fully set forth herein.

97.   Each of the Defendants owed a duty to Plaintiff and Class members to notify them that their PII had been disclosed to and accessed by unauthorized criminal hackers.

98.   Each of the Defendants owed a duty to Plaintiff and Class members to properly train, vet, and oversee employees and vendors who maintain, access, store, and manage Plaintiff's and Class members' PII and to implement and maintain reasonable data security practices to protect the PII from foreseeable cyberattacks and unauthorized access.

99.   Defendants breached these duties and the applicable standards of care by:

a.   Failing to conduct proper and reasonable training and due diligence over vendors and employees and data security systems, practices, and procedures;

b.   Failing to conduct proper and reasonable due diligence over the employees, vendors or contractors that were the vector(s) of and/or facilitated the hackers' infiltration into the system(s) storing Plaintiff's and Class members' PII;

c.   Failing to maintain reasonable and appropriate oversight and audits on their internal data security and their employees, vendors, or contractors that were the vectors of the hackers' infiltration into the system(s) storing Plaintiff's and the other Class members' PII;

d.   Failing to adequately segregate and isolate PII from publicly accessible or publicly adjacent environments;

23

e.      Failing to implement and maintain reasonable safeguards and procedures to prevent the unauthorized disclosure of Plaintiff's and other Class members' PII;

f.      Failing to monitor and detect their confidential and sensitive data environment(s) storing Plaintiff's and other Class members' PII reasonably and appropriately in order to repel or limit the Data Breach;

g.      Failing to implement and maintain reasonable data storage and retention procedures with respect to the PII to ensure the PII was being stored and maintained for legitimate and useful purposes;

h.      Failing to undertake reasonable and sufficient incident response measures to ensure that the ransomware attack directed toward Defendants' sensitive business information would not expose and cause disclosure and unauthorized acquisition of Plaintiff's and other Class members' PII;

i.      Failing to ensure that any and all unauthorized copies of accessed data, including Plaintiff's and other Class members' PII, was deleted, destroyed, rendered unable to be used, or returned to Plaintiff and other Class members;

j.      Failing to reasonably conduct forensic investigation into the scope, nature, and exposure of the Data Breach or to ascertain its full severity;

k.      Failing to provide full disclosure, deceptively misleading consumers through false representations and misleading omissions of fact regarding the Data Breach, consumers' risk and exposure caused by the Data Breach, and the adequacy of the investigation of and response to the Data Breach; and

l.      Failing to provide accurate, complete, and sufficiently detailed notification to Plaintiff and the other Class members regarding the circumstances of the Data Breach, its causes, its effects, the extent of the exposure of their PII, and details regarding the disposition of Plaintiff's and the other Class members' PII at all times during the Data Breach.

100.    Defendants are both the actual and legal cause of Plaintiff's and the Class members' injuries. Had Defendants adopted and maintained reasonable data security procedures and provided timely notification of the Data Breach to those affected, including Plaintiff and other Class members, Plaintiff and other Class members would not have been damaged or would have been damaged to a lesser degree than they actually were.

101.    Plaintiff and other Class members have suffered damages as a result of Defendants' negligence. Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendants' warnings and following their instructions in the notices; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) loss of the benefit of the bargained for data security practices that were not provided as represented; and (i) and diminution of value of their PII.

## COUNT II
### Negligent Misrepresentation

102.    Plaintiff incorporates paragraphs 1–95 as if fully set forth herein.

103.    Defendants supplied false information for the guidance of others in the course of

their business. As alleged above, Defendants falsely represented that their products and services were superior data security practices that would protect Plaintiff and Class members from the Data Breach, when in actuality, Defendants employed deficient and unreasonable data security practices.

104.    Defendants' representations were false and Defendants failed to exercise reasonable care in obtaining or communicating the information. Defendants' data security practices were unreasonable and deficient by:

a.    Failing to conduct proper and reasonable training and due diligence over vendors and employees and data security systems, practices, and procedures;

b.    Failing to conduct proper and reasonable due diligence over the employees, vendors or contractors that were the vector(s) of and/or facilitated the hackers' infiltration into the system(s) storing Plaintiff's and Class members' PII;

c.    Failing to maintain reasonable and appropriate oversight and audits on their internal data security and their employees, vendors, or contractors that were the vectors of the hackers' infiltration into the system(s) storing Plaintiff's and other Class members' PII;

d.    Failing to adequately segregate and isolate PII from publicly accessible or publicly adjacent environments;

e.    Failing to implement and maintain reasonable safeguards and procedures to prevent the unauthorized disclosure of Plaintiff's and other Class members' PII;

f.      Failing to monitor and detect their confidential and sensitive data environment(s) storing Plaintiff's and other Class members' PII reasonably and appropriately in order to repel or limit the Data Breach;

g.      Failing to implement and maintain reasonable data storage and retention procedures with respect to the PII to ensure the PII was being stored and maintained for legitimate and useful purposes;

h.      Failing to undertake reasonable and sufficient incident response measures to ensure that the ransomware attack directed toward Defendants' sensitive business information would not expose and cause disclosure and unauthorized acquisition of Plaintiff's and other Class members' PII;

i.      Failing to ensure that any and all unauthorized copies of accessed data, including Plaintiff's and other Class members' PII, was deleted, destroyed, rendered unable to be used, or returned to Plaintiff and other Class members;

j.      Failing to reasonably conduct forensic investigation into the scope, nature, and exposure of the Data Breach or to ascertain its full severity;

k.      Failing to provide full disclosure, deceptively misleading consumers through false representations and misleading omissions of fact regarding the Data Breach, consumers' risk and exposure caused by the Data Breach, and the adequacy of the investigation of and response to the Data Breach; and

l.      Failing to provide accurate, complete, and sufficiently detailed notification to Plaintiff and other Class members regarding the circumstances of the Data Breach, its causes, its effects, the extent of the exposure of their PII,

and details regarding the disposition of Plaintiff's and other Class members'

PII at all times during the Data Breach.

105.    Plaintiff and Class members justifiably relied on Defendants' false information and were induced to obtain Defendants' products and services in reliance thereon.

106.    Plaintiff and Class members have suffered damages as a result of Defendants' negligent misrepresentation. Plaintiff and Class members have suffered actual and concrete injuries and will suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendants' warnings and following their instructions in the notices; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) loss of the benefit of the bargained for data security practices that were not provided as represented; and (i) and diminution of value of their PII.

## COUNT III
### Unjust Enrichment

107.    Plaintiff repeats and realleges paragraphs 1–95 as if fully set forth herein.

108.    Defendants each knew that the data security of their systems was a material fact to consumers, including Plaintiff and Class members.

109.    Because Defendants are responsible for, and control, their data security practices, Defendants knew and intended that their omissions and concealment thereof would mislead Plaintiff and Class members, and induce them to use, sign up for, and /or buy products and services that they would otherwise not have been willing to purchase.

110.    Acting as reasonable consumers, had Plaintiff and Class members been aware of

the true facts regarding Defendants' deficient and unreasonable data security practices, they would have declined to purchase Defendants' products and services and provide Defendants with their PII.

111.    Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by Defendants' unlawful and unreasonable conduct.

112.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs and members of the Class conferred a benefit on Defendants.

113.    Defendants each acquired and retained money and other value consideration belonging to Plaintiff and the Class members as a result of their wrongful conduct. Defendants profited at the expense of Plaintiff and Class members because Plaintiffs and Class members paid money for products that were worthless due to the fact that they exposed rather than secured their Consumer Information and other data.

114.    Defendants each have unjustly received and retained a benefit at the expense of Plaintiff and Class members because Defendants unlawfully acquired their revenues by failing to employ reasonable data security practices contrary to their misrepresentations and omissions.

115.    Defendants' retention of those benefits violates the fundamental principles of justice, equity, and good conscience. Under the principles of equity, Defendants should not be allowed to keep the money rightfully belonging to Plaintiff and Class members.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of the Class, requests that the Court:

A.    Certify this case as a class action on behalf of the Class defined above, appoint Plaintiff as the Class representative, and appoint the undersigned counsel as Class counsel;

B.    Award equitable relief as is necessary to protect the interests of Plaintiff and Class members;

C.   Award damages to Plaintiff and Class members in an amount to be determined at trial;

D.   Award Plaintiff and Class members their reasonable litigation expenses and attorneys' fees to the extent allowed by law;

E.   Award Plaintiff and Class members pre- and post-judgment interest, to the extent allowable; and

F.   Award such other and further relief as equity and justice may require.

### DEMAND FOR JURY TRIAL

Plaintiff Brian Nulf demands a trial by jury of any and all issues in this action so triable of right.

Plaintiff Brian Nulf, individually and on behalf of all others similarly situated,

By:  /s/ David Pastor

David Pastor, BBO #391000
PASTOR LAW OFFICE, PC
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Phone: 617-742-9700
Fax: 617-742-9701
Email: dpastor@pastorlawoffice.com

Marc E. Dann
Brian D. Flick
DANN LAW
15000 Madison Avenue
Cleveland, Ohio 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

Counsel for Plaintiff and the Putative Class